Geneva Miller **LOWRANCE**, et al., Appellants,

v.

Bulah Miller **WHITFIELD**, Appellee.

No. 01–86–00604–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 21, 1988.

Rehearing Denied May 26, 1988.

Lester R. Buzbee, III, Houston, for appellants.

Glenn Sodd, Thomas W. Gray, Corsicana, Charles L. Price, Houston, for appellee.

Before JACK SMITH, DUGGAN and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

The primary issue in this will construction suit is whether the last will and testament of Wade Miller, deceased, devised his children a vested remainder in certain land or devised them a contingent remainder subject to a condition precedent to vesting. After summary judgment motions were filed by all parties, the trial court held, as a matter of law, that the devise was a contingent remainder. The appellants, Geneva Miller Lowrance and Ronald Lowrance, assert nine points of error on appeal.

Wade Miller died survived by his wife, Bulah Miller Whitfield, the appellee, and his two daughters, Geneva Miller Lowrance, and Lucille Miller Rhodes. Lucille later died, and Ronald Lowrance, her nephew and son of Geneva Miller Lowrance, succeeded to her interest in Wade Miller's estate.

It is uncontested that Wade Miller's will devised to his wife, the appellee, a life estate in all his separate property and his interest in their community property. In her summary judgment affidavit, the appellee alleged that the appellants executed and delivered an oil lease on land that was part of the Wade Miller estate and that she refused to execute the lease. The appellants allege that the appellee had attempted to execute an oil and gas lease upon the real property and that she had requested that the appellants also execute the lease. The appellants brought suit for construction of the will, declaration of the validity of the restrictions upon the alienability of real property devised thereunder, declaration of the powers of the life tenant, mandatory and restrictive injunctive relief and damages, and for waste of the remainder estate.

Initially, the appellants contend that the trial court erred in granting summary judgment for the appellee because, as a matter of public policy, the condition contained in Wade Miller's will was void as a restraint on alienation. They argue that because the will left them a vested remainder, the provision in the will, that made their vested remainder interest subject to complete divestment, was void and against public policy. The appellee contends that the appellants' interest was not a vested remainder, and the rule against unreasonable alienation is not applicable.

■ The provisions of Wade H. Miller's last will and testament that the trial court construed are as follows:

## V.

Subject to the life estate in and to the real estate described in the foregoing paragraph IV as bequeathed and dis- missed [sic] to my wife, BULAH MILLER, and subject to the hereinafter provided condition, it is my will and desire that all of the real estate deemed in law to be my separate property, and all of my interest in the real estate deemed in law to be community property of my marriage to BULAH MILLER, that I may own or have an interest in at the time of my death shall pass to and vest in fee simple in my three (3) children, namely, MILDRED MILLER LEWIS, wife of NED LEWIS, LUCILLE MILLER RHODES, wife of BUDDY RHODES, and GENEVA MILLER LOWRANCE, wife of J.J. LOWRANCE and; at the time of death, subject to the hereinabove mentioned life estate and subject to the hereinafter provided condition, I hereby GIVE, BEQUEATH and DEMISE to my said children, namely, MILDRED MILLER LEWIS, LUCILLE MILLER RHODES, and GENEVA MILLER LOWRANCE, all of the real estate deemed in law to be my separate property and all of my interest in and to real estate deemed in law to be community property of my marriage to BULAH MILLER, that I may own or have an interest in at the time of my death, to have as their own in fee simple, to share and share alike, however, subject to the hereinafter provided condition.

\*    \*    \*    \*    \*    \*

## VII.

As a condition hereof in vesting the fee simple title to real estate herein bequeathed and dismissed [sic] to my said children, or their children, as the case may be, Testator hereby expressly provides that in the event any child or the child or children of any child should sell, or attempt to sell by executing a deed or other instrument of conveyance, or mortgage or attempt to mortgage by executing any instrument designed as a mortgage, to, of or upon any interest bequeathed and dismissed [sic] to any child or children during the lifetime of my wife, BULAH MILLER, then, in such event, the part or portion of my said estate so bequeathed and dismissed [sic] to said child or children shall divest of and from said child and children and thereupon pass to and become the property of my said wife, BULAH MILLER. In such event, said interest or interests shall divest of and from said child or children and thereupon become vested in my said wife without necessity of re-entry or entry by my said wife, BULAH MILLER, who thereafter shall hold such interest or interests in fee simple as her own property to the full extent as if said interest or interests had been hereby bequeathed and dismissed [sic] to her in fee simple in the first instance.

In the event my wife, BULAH MILLER, should fail and refuse to pay all of the just debts owing by me, as soon as practical after my said death from personal property and proceeds therefrom herein bequeathed and dismissed [sic] to her. Then, in such event, she shall only take so much of my said estate, including personality and realty, that she would be entitled to hold and take under the laws of descent and distribution in force and effect at the time of my said death, and the remaining property as bequeathed and dismissed [sic] to my said wife, BULAH MILLER, shall pass to and vest in my hereinabove named children or their said children, the same as if my said wife were deceased at the time of my death.

In construing wills, the intent of the testator must be determined and given effect whenever possible. *Rust v. Rust*, 147 Tex. 181, 211 S.W.2d 262, 266 (Civ.App.—Austin), *aff'd*, 147 Tex. 181, 214 S.W.2d 462 (1948). All provisions of a will must be considered in ascertaining the real intent of the testator. *Frame v. Whitaker*, 120 Tex. 53, 58, 36 S.W.2d 149, 151 (1931). A basic rule of will construction is to determine the intent of the testator from the language within the four corners of an instrument. *Odeneal v. Van Horn*, 678 S.W.2d 941, 942 (Tex.1984). However, if the instrument is ambiguous to the extent that the testator's

intent cannot be ascertained, extrinsic evidence is admissible to aid in the will's construction. *Unitarian Universalist Serv. v. Lebrecht*, 670 S.W.2d 402, 404 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

If ambiguities regarding the language of a will remain, the general rules of construction apply. *Rust v. Rust*, 211 S.W.2d at 266. Whether a remainder is vested or contingent depends upon the language used. If the conditional element is incorporated into the description of or into the gift to the remainderman, then the gift is contingent; however, if after words giving a vested interest, a clause is added divesting the interest, the remainder is vested. *Guilliams v. Koonsman*, 154 Tex. 401, 406, 279 S.W.2d 579, 582 (1955).

The principal phrases in the provisions of Wade Miller's will, that are causing the difficulty in its construction, are in paragraphs V and VII. Paragraph V states: "subject to the life estate in ... and subject to the hereinafter provided condition...." Paragraph VII, "As a condition hereof in vesting the fee simple title to real estate herein bequeathed and dismissed [sic] to my said children ... said estate so bequeathed and dismissed [sic] to said child or said children shall divest of and from,...."

The appellants argue that the will provides that their interest divests if they sell or attempt to sell their interest, and therefore, their interest must be vested in order for the interest to divest. The appellee responds that because the will states that, "as a condition hereof in vesting the fee simple title ..." in the appellants, the vesting of appellants' interest was conditional and a contingent remainder.

The parties have asserted that the provisions of the will are clear and unambiguous. We disagree. The phraseology used in paragraphs V and VII appear to conflict and leave in doubt the true intention of the testator. Under such circumstances, the intent of the testator becomes an issue for the trier of fact to determine, and extraneous evidence may be introduced to determine the testator's intent. *Unitarian Universalist Serv. v. Lebrecht*, 670 S.W.2d at 404.

Ordinarily, when a fact issue has been raised, it precludes the issuance of a summary judgment. But where the summary judgment evidence is clear, positive and direct, otherwise credible and free from contradiction and inconsistencies and could readily have been controverted, and there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979).

The appellants objected to the affidavit of Mr. Bennett, the attorney who drafted the will, because they claim there was no allegation of undue influence, lack of testamentary capacity, overreaching, or improper attestations. They also objected because there were no claims or allegations that the deceased could not read or write, therefore parol evidence was not admissible. They further objected to the affidavit of on the basis that it stated what he intended to write, the reason behind his wording and what he thought the testator wanted in his will and that the will was clear, concise, unambiguous and spoke for itself.

■ Because we find that the will is ambiguous as to Wade Miller's intent, we consider only the admissible uncontradicted extrinsic summary judgment evidence. Attached to the appellee's motion for summary judgment was the affidavit of W.T. Bennett, the attorney who prepared Wade Miller's will, which stated in part:

> Wade H. Miller stated and I so provided that "as a condition hereof in vesting the fee simple title to the real estate", that they not sell or attempt to mortgage or convey the property. This was the language I used in preparing his will because this is what he said he wanted. His stated intent was that they would not take under his will if this condition was violated and that the property should not vest in them under these conditions. He did not want his children to interfere in any way with Bulah Miller's use, occupancy or enjoyment of the prop-

erty and if they did, they would not take under the will. He did not want them to have anything to do with the property while she was alive and if they did something prohibited in paragraph VII, they would not take under said will.

In the instant case, the only issue the trial court determined was the intent of Wade Miller in the disposition of his property in his last will and testament. Other than Mr. Miller's will, the only relevant evidence before the court bearing upon Mr. Miller's intent was the affidavit of Mr. Bennett who prepared the will. His statements were clear, concise, and uncontradicted that it was the intent of the testator not to vest the fee simple title to his real estate in his children until such time as the conditions expressed in the will had been met.

We hold that the summary judgment proof conclusively shows that the appellants' interest in the testator's estate was a contingent remainder that was subject to a condition precedent to its vesting. The rule against unreasonable restraint on alienation is not invoked under such circumstances.

Appellants' points of error one and two are overruled.

In points of error three and four, the appellants contend that the trial court erred in denying their motion for summary judgment because the appellee was guilty, by admission, of waste, and that as a matter of law, a life tenant cannot dispose of the corpus of the estate unless expressly authorized. The appellants contend in points of error five and six, that the trial court erred in denying appellants' motion for summary judgment because, as a matter of law, a life tenant can neither remove or appropriate minerals, including oil and gas, nor dispose of the estate.

Neither a life tenant nor a remainderman can alone execute a valid mineral lease without the joinder of the other. *Kemp v. Hughes,* 557 S.W.2d 139, 142 (Tex.Civ.App. —Eastland 1977, no writ). Wade Miller's will provided that the appellee was a life tenant and the appellants were remaindermen. In Geneva Lowrance's affidavit, she

admitted that she executed oil and gas leases on the 220.17-acre and the 149.88-acre tracts in accordance with the appellee's request, but she refused to ratify a lease on the 145-acre tract. The 145-acre tract was classified as separate property in the inventory and appraisement of the Wade Miller estate. Because the appellants joined the appellee in the execution of leases on the 220.17- and 149.88-acre tracts, they cannot now complain of the execution of leases covering the 220.17- and 149.88-acre tracts, and the unratified 145-acre tract is the only lease in controversy.

The appellee asserts that the execution of a lease covering the 145-acre tract was within her power both as independent executrix of Wade Miller's estate, and as the owner of an undivided one-half interest in the community property. She claims that the estate was still open when the leases were executed.

As to the appellee's claim that she could execute a lease as an owner of one-half the community property, the 145-acre tract was classified as Wade Miller's separate property. The appellee is a life tenant in all of Wade Miller's separate property. She does not have the power to execute a lease on that property as owner of a one-half interest in the community property.

The appellants claim that the estate was closed once the appellee, as independent executrix, paid the debts of the estate, recorded the will, filed an inventory and appraisal of the estate, and listed the claims of and against the estate. The appellants are incorrect in stating that these acts alone constitute the closing of the estate. The Probate Code permits an independent executor who has paid all the debts and distributed all assets to the person entitled to receive them to formally close an independent administration by filing final accounts verified by affidavit with the probate court. Tex.Prob.Code Ann. sec. 151 (Vernon 1980). The appellants do not claim, and there is no evidence in the record, that the appellee ever filed a formal verified final account.

The Probate Code also provides two other methods for closing an estate. Tex. Prob.Code Ann. sec. 152 (Vernon 1980) authorizes any distributee to file an action in the probate court to close an independent administration at any time after the estate has been fully administered and there is no further need for an independent administration. Tex.Prob.Code Ann. sec. 149B (Vernon Supp.1988) authorizes any person interested in an estate to petition for an accounting and distribution of the estate at any time after all estate and inheritance taxes are paid or three years from the date that the independent administration was created and the order appointing the independent executor was entered, whichever date is later. The appellants have not alleged in their summary judgment motion nor their brief that they have complied with the requirements of sections 151 or 149B, or that the estate has been closed under either of these sections.

Under Tex.Prob.Code Ann. sec. 367(b) (Vernon 1980), personal representatives, acting solely under order of the court, may be authorized by the probate court to make, execute, and deliver leases. Moreover, the term, "personal representative," as used in this context, does not include independent executors. *Marshall v. E.R. Hobert Estate*, 315 S.W.2d 604, 606 (Tex. Civ.App.—Eastland 1958, writ ref'd). Although *Marshall* holds that a court's authority to order execution of an oil and gas lease under section 367 does not extend to an independent executor, Texas courts have not squarely faced the issue of whether an independent executor has the authority to execute an oil and gas lease apart from section 367. 18 M.K. Woodward and E. Smith, *Probate and Decedents' Estate* sec. 1031 (Texas Practice 1971).

Several commentators have concluded that an independent executor does have the power to execute an oil and gas lease. Winn, *Non Judicial Administration of Estates in Texas*, 17 Sw.L.J. 384 (1963); Woodward, *Some Developments in the Law of Independent Administrations*, 37 Tex.L.Rev. 828 (1959); Woodward, *Independent Administration under the New Texas Probate Code*, 34 Tex.L.Rev. 687

(1956). They rely on the independent executor's broad powers to support this proposition.

Generally, an independent executor has the authority that an administrator or executor under court order would have in the settlement of the estate. *See* Woodward, *Some Developments, supra,* at 829–830. *If* an independent executrix has the same power as an administrator or executor with court authority, section 367(b) could serve as a source of authority for an independent executrix to execute an oil and gas lease. *Id.*

The appellants argue that the execution of a mineral lease is an act done for preservation, rather than for settlement of the estate, because it does not relate to the payment of debts or distribution of assets to devisees. "Settlement of estate" has been defined as including adjustment on a payment of debts against the estate, the sale of decedent's property for payment of his debts, the setting aside of exempt property to the widow and minor children, and the distribution of the estate to the distributees entitled thereto. *Roy v. Whitaker,* 92 Tex. 346, 48 S.W. 892 (1898), *modified by,* 92 Tex. 357, 48 S.W. 367 (1899). Thus, the appellants contend that the execution of a lease is not an act done for the settlement of the estate, and that an independent executor cannot execute a mineral lease.

We disagree, and conclude that under the particular circumstances present here, the independent executor does have authority to execute an oil and gas or mineral lease during an independent administration of an estate for the purpose of preserving and protecting the assets of the estate. To hold otherwise could subject an independent executor to potential liability for nonfeasance in preserving the assets of the estate. We hold that the appellee, as independent executrix, under the facts of this case could execute the lease on the 145–acre tract.

The appellants' points of error three, four, five, and six are overruled.

■ In point of error seven, the appellant contends that the trial court erred in

granting the appellee's motion for summary judgment because there was no sale of their interest and the will contained no forfeiture clause pertaining to leasing. We find no merit to this contention because the Texas Supreme Court has held that an oil and gas lease is a sale of an interest in land. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982).

Wade Miller's will states that the condition is triggered if his child or children sells or attempts to sell by executing a deed or instrument of conveyance or mortgage to, of, or upon *any interest.* Because an oil and gas lease is an interest in land, the execution of an oil and gas lease by the remainder was a violation of the stated condition.

The appellants' point of error seven is overruled.

■ In point of error eight, the appellants claim that the trial court erred in granting the appellee's motion for summary judgment because there was a material fact question. The appellants argue that Geneva Lowrance's affidavit raised fact issues of estoppel and laches because the appellee had been the first to execute a prior lease and knew that the appellants had executed a lease at her request.

The appellants have not preserved the defense of estoppel or laches because they failed to present a question of fact on each element. The movant must come forward with summary judgment evidence with respect to each element of the affirmative defense. *Nichols v. Smith,* 507 S.W.2d 518, 520 (Tex.1974). Unless each element of the affirmative defense is raised by evidence that would be admissible upon the trial of the case, the affirmative defense will not prevent the granting of a summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

Geneva Lowrance's affidavit stated that she went along with the appellee's desire to execute a lease, with the appellee's knowledge and approval, and executed a lease to the same property. She further stated that the lease complained of was made eight years ago. These statements tell what Geneva's actions were, not the appellee's.

She failed to allege sufficient facts to show that the appellee failed to timely assert the appellee's rights, thus the doctrine of laches is not applicable. She also failed to allege facts that she was mislead or induced by the appellee's actions to sign the leases, thus the doctrine of estoppel is not applicable.

Point of error eight is overruled.

■ The appellants contend in their final point of error that the trial court erred in denying their motion for summary judgment because there was no material question of fact. The appellants argue that the appellee was impeachable for waste by her own admission and should be required to account. They further request that the appellants are entitled to have a receiver appointed.

The appellants renew their argument raised in points of error three, four, five, and six. As discussed, the appellee was not liable for waste.

The appellants' interest was a contingent remainder, and their interest, by the terms of Wade Miller's will, terminated when they executed the oil and gas leases. The appellants are not entitled to an accounting or the appointment of a receiver because their interest in the land terminated upon the execution of the lease.

Point of error nine is overruled.

The results of the trial court's judgment appear to be harsh; however, the court had a duty to apply the law to the summary judgment evidence presented. Because we find no error, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

DUGGAN, J., dissents.

DUGGAN, Justice, dissenting.

I respectfully dissent. I agree with the majority that the will of Wade Miller, deceased, is ambiguous. However, I do not agree that the summary judgment evidence disposes of the fact issue of the testator's intent as to the disposition of his property.

To me, the attorney's affidavit accompanying the appellee life tenant's motion for summary judgment is not, as required by Tex.R.Civ.P. 166–A, sufficiently free from contradiction and inconsistencies as to entitle the appellee/movant to judgment.

My reading of the affidavit, which was submitted by the attorney who prepared the testator's will, indicates that the testator did not intend to prohibit the appellee, his widow, and the appellants, his children, from jointly benefitting by mutually agreeable development of the properties bequeathed.

On the one hand, the affidavit recites that the testator's intent was that his children "would not take under the will if this condition ["that they not sell or attempt to mortgage or convey"] was violated and that the property should not vest in them under these conditions." On the other hand, the affidavit recites in the very next sentence that "He did not want his children to interfere in any way with [appellee] Bulah Miller's use, occupancy or enjoyment of the property and if they did, they would not take under the will...."

Bulah Miller's fullest "use, occupancy or enjoyment of the property" required that she be able to benefit from the execution of valid leases on the property as life tenant. Literally, her enjoyment of the property would be interfered with by the remaindermen's *refusal* to join with her in the execution of leases she might seek to execute. Because it is hornbook law that a valid lease can only be executed by the joinder of life estate and remainder interests, the life tenant's fullest benefit and enjoyment of the property requires that the remaindermen be able to join her in the execution of leases on terms and conditions *she* desired.

The reasonable conclusion to be drawn from these conflicting affidavit statements of the testator's intent is that (1) he desired that the remaindermen not interfere with or complicate the life tenant's enjoyment and occupancy of the estate by sales, mortgages or conveyances of their interests, and that (2) he did not contemplate that the remaindermen's execution of mineral leases desired by the life tenant and jointly advantageous to all parties, would be proscribed "conveyances" that brought on automatic forfeiture of their estates.

I believe that a fact question exists as to the essential issue of the testator's intent, and that summary judgment was thereby precluded.

I would reverse and remand to the trial court.